

EOD

02/16/2018

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LEO EDWARD WHELAN** | § | Case No. 15-41659 |
| xxx-xx-9252 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BILL HUDDLESTON | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 16-4013 |
| | § | |
| LEO EDWARD WHELAN | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

Before the Court for consideration is a Motion for Relief from Judgment filed by

the Debtor-Defendant, Leo Edward Whelan (the "Defendant") pursuant to Rule 60 of the

Federal Rules of Civil Procedure, made applicable to this bankruptcy adversary

proceeding by Fed. R. Bankr. P. 9024, and the objection filed thereto by the Plaintiff, Bill

Huddleston (the "Plaintiff"). Based upon the Court's consideration of the pleadings, the

evidence submitted by the parties, and the applicable law, the Court concludes that the

Defendant's Motion for Relief from Judgment should be denied. This memorandum of

decision disposes of all issues pending before the Court.[1]

---

[1] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§1334, and §157(a), as well as 11 U.S.C. § 523. This Court has authority to enter a final order regarding the motion in this adversary proceeding since the underlying action statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper

## Factual and Procedural Background

With the assistance of retained counsel, the Defendant, Leo Edward Whelan, filed

a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 17,

2015 in the Sherman Division of this Court.  The Debtor's filing of his voluntary petition

invoked the automatic stay under 11 U.S.C. § 362(a) which, among other things,

precluded the continued prosecution of a certain state court lawsuit brought by Bill

Huddleston against the Debtor, his oil and gas company, and his company's agents before

the 134th Judicial District Court in and for Dallas County, Texas under cause no. DC-13-

00712 and styled *Bill Huddleston v. WEXCO Resources, LLC, Leo Whelan, Bryson*

*Wallace, and Jourdan Wallace* (the "State Court Litigation").  The State Court Litigation

sought through various remedies the recovery of approximately $641,134 from WEXCO

arising from the execution of an agreement and alleged that the corporate veil of WEXCO

should be pierced and Whelan held personally liable for the unpaid bonus amount[2] under

the agreement because Whelan had allegedly utilized the corporation to perpetrate a

fraud.

On February 5, 2016, the Plaintiff filed a complaint against the Defendant

seeking:  (1) to deny the entry of any discharge order pursuant to 11 U.S.C. § 727(a)(3)

---

exercise of full judicial power by this Court.

[2] A "bonus" is the cash consideration paid or agreed to be paid as an incentive for a lessor to execute an oil and gas lease.  *In re Estate of Slaughter*, 305 S.W.3d 804, 811 (Tex. App. – Texarkana 2010, no pet.); *EnerQuest Oil & Gas, LLC v. Plains Expl. & Prod. Co.*, 981 F. Supp.2d 575, 602-03 (W.D. Tex. 2013).

and (a)(4); or alternatively, to declare the indebtedness owed to the Plaintiff by the Defendant nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).[3]  A summons was issued by the Court on February 9, 2016 and delivered to the Plaintiff for delivery.[4]  Having subsequently received no proof that the complaint and summons were timely served, this Court entered on a *sua sponte* basis an *Order Regarding Service of Adversary Complaint Upon Defendant, Leo Edward Whelan* on April 20, 2016 in which the Court demanded that the Plaintiff either file appropriate proof that the complaint had been properly served within seven days of the issuance of the original summons or otherwise proceed to obtain and effectuate timely service of a new summons.[5]  The Plaintiff procured a new summons from the Court on April 29, 2016 and promptly served the summons and complaint upon the Defendant on that same date pursuant to Fed. R. Bankr. P. 7004(b)(1).

On July 20, 2016, having noted that no answer had been timely filed to the Plaintiff's complaint by the Defendant despite proper notice, the Court *sua sponte* issued its Entry of Default by Court wherein default was entered against the Defendant and the Plaintiff was ordered to submit a motion for default judgment within 21 days of the entry

---

[3]  The complaint also included an alternative request for dismissal under § 707(b) which was denied in the default judgment entered by the Court.

[4]  Pursuant to its usual procedures, the Court also sent an electronic notification regarding the filing of the complaint and the issuance of the summons to the Defendant's Chapter 7 attorney, Robert DeMarco, in compliance with Fed. R. Bankr. P. 7004(g) and Fed. R. Civ. P. 5(b)(2)(E).

[5]  *Order Regarding Service of Adversary Complaint Upon Defendant, Leo Edward Whelan* entered on April 20, 2016 [dkt #4] in this adversary proceeding.

of the order.[6]  Despite his lack of appearance in the adversary, the Defendant was served

with the Entry of Default.[7]  In substantial compliance with the Entry of Default, the

Plaintiff subsequently filed his Motion for Default Judgment on August 12, 2016.  The

motion was accompanied by documentary evidence, deposition and affidavit testimony

from the State Court Litigation, and accompanying declarations.[8]  The Motion for Default

Judgment was also served upon the Defendant despite his prior failure to appear or to

respond in any manner to the adversary proceeding.[9]  He filed no objection or other

response to the Motion for Default Judgment.

In its review of the Motion for Default Judgment, the Court noted that the entry of

a default did not automatically entitle the Plaintiff to a judgment on all requested relief

and, upon its review of the admitted facts and supplementary evidentiary materials, the

Court determined that, notwithstanding the default of the Defendant, the Plaintiff had

failed to demonstrate an entitlement to a denial of the Debtor's discharge under the

referenced subsections of § 727(a).   However, as to the alternative request in the

complaint for a determination of the dischargeability of the particular debt which the

Plaintiff alleged was owed to him by the Defendant, the complaint contained well-

pleaded allegations regarding fraudulent inducement of a contract which, if assumed to be

---

[6]  *Entry of Default by Court* entered on July 20, 2016 [dkt #9] in this adversary proceeding.

[7]  *See Certificate of Mailing* filed on July 22, 2016 [dkt #10] in this adversary proceeding.

[8]  *Motion for Entry of Default Judgment* filed by the Plaintiff on August 12, 2016 [dkt #12] in this adversary proceeding.

[9]  *Id.*

**-4-**

true, would be sufficient to prevail on a claim for damages under Texas law.[10] Thus, this Court entered its *Default Judgment Determining Debt to be Nondischargeable* on August 29, 2016 wherein, in light of the admitted facts arising from the default and the supplemental evidentiary submissions,[11] the Court determined that the Plaintiff was entitled to a default judgment in the referenced amount of $641,134.50, plus pre-judgment interest, attorneys' fees, and court costs, and that such indebtedness should be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). All other relief sought by the

---

[10] "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)). Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Id.* at 798-99. The basis of any fraudulent inducement claim is an executed contract that was procured by fraud, without which it would not have been executed, and the damages sought must flow directly from that contract. *Lam v. Phuong Nguyen,* 335 S.W.3d 786, 790 (Tex. App.– Dallas 2011, pet. denied). A party claiming fraudulent inducement must prove: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Formosa Plastics,* 960 S.W.2d at 47. The complaint in this case sufficiently alleged that the Defendant had utilized his corporation to perpetrate a fraud — that, with no intention of actually performing the contract and paying the money due thereunder — the Defendant falsely represented that his company would lease the Plaintiff's mineral acreage (with the accompanying obligation to pay the bonus price of $300 per net mineral acre for the 2137.115-acre tract) subject to the sole contractual contingency of the acquisition of an acceptable mineral title report which the Plaintiff alleged was satisfied. Those allegations were admitted by the Defendant's default.

[11] Though the Defendant now asserts that he should owe nothing to the Plaintiff, his schedules executed under penalty of perjury reveal a scheduled debt to the Plaintiff in the amount of $640,000.00 on Schedule F that is not characterized as contingent, unliquidated, or disputed. *Schedule F* filed by the Debtor-Defendant on October 15, 2015 [dkt #11] in case no. 15-41659. That sworn schedule has never been superseded. "Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *Rex-Tech Int'l, LLC v. Rollings (In re Rollings)*, 451 F. App'x. 340, 348 (5th Cir. 2011). When schedules containing such statements remain unsuperseded, those statements can constitute binding admissions. *See, e.g. Jacobson v. Ormsby (In re Jacobson)*, 2006 WL 2796672, at *17 (W.D. Tex. Sept. 26, 2006), *aff'd*, 2007 WL 2141961 (5th Cir. July 26, 2007); *In re 1701 Commerce, LLC*, 511 B.R. 812, 829 (Bankr. N.D. Tex. 2014); *In re Sissom*, 366 B.R. 677, 697 (Bankr. S.D. Tex. 2007).

complaint, including the objection to the Defendant's discharge, was denied.[12]

For months after the entry of the default judgment, no further action accrued in this adversary proceeding, save for the Plaintiff's action to procure a writ of execution on the judgment.[13]  Finally, 364 days after the entry of the default judgment, the Defendant filed his Motion for Relief from Judgment.[14]  Upon the filing of a timely objection by the Plaintiff[15] and after the conclusion of an evidentiary hearing on the motion, the Court took the matter under advisement.  This decision disposes of all issues pending before the Court.

## Discussion

Rule 55(c) of the Federal Rules of Civil Procedure, as incorporated into adversary proceedings in bankruptcy cases by Rule 7055 of the Federal Rules of Bankruptcy Procedure, allows a bankruptcy court to "set aside a final default judgment under Rule 60(b)."[16]  FED. R. CIV. P. 55(c).  "[R]elief under Rule 60(b) is considered an extraordinary

---

[12] *Default Judgment Determining Debt to be Nondischargeable* entered on August 29, 2016 [dkt #13] in this adversary proceeding.

[13] *Writ of Execution to the United States Marshal* issued on March 13, 2017 [dkt #15] in this adversary proceeding.

[14] *Defendant's Motion and Brief for Relief from Judgment* filed on August 28, 2017 [dkt #17] in this adversary proceeding.

[15] The original objection was superseded by the *Plaintiff's Amended Response to Defendant's Motion and Brief for Relief from Judgment* filed on September 19, 2017 [dkt #22] in this adversary proceeding.

[16] The Court summarily denies the Defendant's request for relief under Fed. R. Civ. P. 60(a) which was based upon the same "mistakes" as alleged in his Rule 60(b) requests.  As noted by the Fifth Circuit:

The scope of Rule 60(a) is . . . very limited. . . . Rule 60(a) finds application where the

remedy . . . the desire for a judicial process that is predictable mandates caution in reopening judgments." *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, 191 (5th Cir. 2005). Thus, the scope of review under Rule 60(b) is narrower than it would be in a direct appeal. *Aucoin v. K–Mart Apparel Fashion Corp.*, 943 F.2d 6, 8 (5th Cir.1991). It allows a trial court to "correct obvious errors or injustices," *Fackelman v. Bell,* 564 F.2d 734, 736 (5th Cir.1977), but it "may not be used to provide an avenue for challenges of mistakes of law that should ordinarily be raised by timely appeal." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985). Thus, "[t]he extraordinary relief afforded by Rule 60(b) requires that the moving party make a showing of unusual or unique circumstances justifying such relief." *Id.* It is "an extraordinary remedy that should be used sparingly." *Templet v. Hydrochem, Inc.,* 367 F.3d 473, 479 (5th Cir. 2004).

---

record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature. . . . If of this sort, it matters not whether the magistrate committed it—as by mistakenly drafting his own judgment—or whether his clerk did so . . . the law does not regard such trifles. In such instances the judgment can be corrected to speak the truth.

Thus, it is proper to use Rule 60(a) to correct a damages award that is incorrect because it is based on an erroneous mathematical computation, whether the error is made by the jury or by the court. Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b). Correction of an error of "substantive judgment," therefore, is outside the reach of Rule 60(a).

*Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 668–69 (5th Cir. 1986) (citations and internal quotations omitted) (quoting *Dura-Wood Treating Co., Div. of Roy O. Martin Lumber Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982). No such mechanical mistake was implicated by the entry of the default judgment.

*Timeliness*

Even in cases in which extraordinary circumstances might be otherwise demonstrated, Rule 60 requires that such a motion be filed "within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1).  What constitutes a reasonable time "depends on the particular facts of the case in question," *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 702 n.5 (5th Cir. 2014), and "[t]imeliness . . . is measured as of the point in time when the moving party has grounds to make a Rule 60(b) motion, regardless of the time that has elapsed since the entry of judgment." *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir.), *cert. denied*, 138 S. Ct. 358, 199 L. Ed. 2d 266 (2017).  In other words, a Rule 60(b) movant is required to articulate a "good reason for his failure to take appropriate action sooner." *Id.*

The Defendant contends that he has met this timing requirement because his motion was filed on the 364th day after the entry of the judgment.  However, a motion filed under Rule 60(b) is not considered timely solely because it is filed within the one-year time limit.  As the Seventh Circuit observed, Rule 60(b) "does not provide that grounds (1), (2), and (3) may be raised at leisure up to one year. The "reasonableness" requirement of Rule 60(b) applies to all grounds; the one-year limit on the first three grounds enumerated merely specifies an outer boundary." *Planet Corp. v. Sullivan*, 702 F.2d 123, 125–26 (7th Cir. 1983).  "Although the fact that a motion was made barely within the one-year time limit gives the court the *power* to entertain it, as the delay in

-8-

making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'" *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation* , 605 F.2d 648, 656 (2d Cir. 1979) (emphasis in original).  *See also, Peltz v. Com Servs. , Inc. (In re USN Commuc'ns, Inc.)*, 288 B.R. 391, 396-97 (Bankr. D. Del. 2003); *F.D.I.C. v. Nick Julian Motors (In re Nick Julian Motors)*, 148 B.R. 22, 26-27 (Bankr. N.D. Tex. 1992).  Further, as examined in a Southern District of Texas case on timing facts similar to the current case:

> The defendants filed their motion on the last day of the one year limitation period imposed by the rule.  One year is the outside limit beyond which the judicial system's need for finality automatically prevails.  *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 931 (5th Cir.1976).  If the need for finality of litigation must prevail one year and one day after judgment, then surely the need for finality must be strong when the motion is filed exactly one year after judgment.  Accordingly, the burden that must be carried to show that the delay in filing was reasonable increases as the delay approaches the outside limits of the one year limitation period.

*Gilley's Enterprises, Inc. v. Buck 'N Broncos, Inc*., 1982 WL 52216, at *2 (S.D. Tex. May 10, 1982) (citing *Amoco*). The same analysis applies to a Rule 60(b) motion filed two days before the finality of litigation would automatically prevail.  Thus, the protection afforded to the finality of this judgment is nearing its apex and the Defendant carries a significantly high burden to demonstrate that his delay in challenging the entered judgment was reasonable.

The evidence demonstrates that the Defendant's delay in challenging the entry of

the default judgment was not reasonable and that his motion for relief from the judgment is untimely.  In the underlying bankruptcy case, the Defendant was represented by counsel and had adequate notice of all legal proceedings.[17]  He does not dispute that he was properly served with the complaint and summons in this adversary proceeding.  He does not dispute that he was served with both the notice of default entered by the Court and the motion for default judgment filed by the Plaintiff.  He acknowledges in his declaration under penalty of perjury that any purported defenses to the Plaintiff's complaint were known to him when he was served with the complaint.[18]  However, based upon his stated belief that he did not have sufficient funds to retain counsel to defend himself in the four dischargeability lawsuits filed against him and because of his asserted fear of the impact of his lack of legal knowledge (based on prior litigation experience), he made a conscious decision to forego the filing of any answer in those lawsuits[19] and to seek instead a settlement of the claims brought thereby.[20]  There is no lack of

---

[17]  Indeed the Defendant's bankruptcy counsel actually assisted in the negotiation and execution of the agreed final judgments entered in two of the adversary proceedings filed against the Defendant. *See infra* note 20.

[18]  Ex. 1 to *Defendant's Motion and Brief for Relief from Judgment* filed on August 28, 2017 [dkt #17] in this adversary proceeding at ¶ 10.

[19]  *Id.* at ¶¶ 8, 10, and 17.

[20]  The Court's docket reveals that the Defendant settled adversary proceeding no. 16-4016, a dischargeability action under § 523(a)(2)(A) based upon fraudulent inducement, through the entry of an Agreed Final Judgment on June 17, 2016 evidencing a nondischargeable debt of $3.918 million.  It further reveals that adversary proceeding no. 16-4108, also a dischargeability action brought under § 523(a)(2)(A), was settled through the entry of an Agreed Final Judgment on November 18, 2016, recognizing a nondischargeable debt of $1.78 million.  A third adversary, adv. proc. no. 16-4018, resulted in the entry of a default judgment determining that an additional debt of $1.4 million should be rendered nondischargeable pursuant to § 523(a)(2)(A) and (a)(6).

understanding here regarding the implications of his inaction.  Such inaction was intentional.  There is no mitigating explanation offered.  The Defendant knew that the complaint had been filed, that a default had been entered against him for his failure to appear and answer that complaint, and that the Plaintiff had filed a motion for default judgment.  Yet he elected to wait 364 days after the entry of judgment before appearing in this Court to participate in this litigation.  Because of the inordinate 364-day delay in bringing any challenge to the judgment, the fact that the available defenses were known to the Defendant at the time of the judgment but were not timely presented to this Court by the Defendant's own intentional conduct, and with no other extraordinary reason having been presented, the Court concludes that the Defendant's Rule 60(b) motion to set aside the resulting default judgment must be denied as untimely.  *Pryor*, 769 F.2d at 288 [concluding that when the entry of the judgment is known and the defenses pertaining to the claims undergirding that judgment were known at the time of its entry, "the usual time period for direct appeal presumptively delimits, as a matter of law, the 'reasonable time'" contemplated by Rule 60(b)."].

However, even if the twelve-month period after the judgment entry were somehow deemed a reasonable time within which the Defendant could file his Rule 60(b) motion, the relief sought by the motion would still be denied on substantive grounds.[21]  The

---

[21]  Guiding the court's consideration of a Rule 60(b) motion, the Fifth Circuit has delineated several general factors for consideration:  (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether, if the judgment was a default . . . in which there was no consideration of the merits, the

Defendant raises challenges under four separate grounds provided by Rule 60(b).[22]

*Rule 60(b)(1)*

The Defendant first claims that he should be granted relief from the default judgment because of inadvertence or excusable neglect.[23] "In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1), we examine the following factors:  whether the default was willful, whether setting it aside would

---

interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and whether there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.  *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. 1981).  "These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments."  *Id.*

[22]   As raised by the motion, the relevant sections of Rule 60(b) of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr. P. 9024, provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an adverse party;
> . . .
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or otherwise vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

[23]   "While Rule 60(b)(1) allows relief for 'mistake, inadvertence ... or excusable neglect,' these terms are not wholly open-ended. Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law.  This Court has pointedly announced that a party has a duty of diligence to inquire about the status of a case, and that Rule 60(b) relief will be afforded only in 'unique circumstances.'"  *Pryor,* 769 F.2d at 287 (citing *Wilson v. Atwood Group*, 725 F.2d 255, 257-58 (5th Cir.) (en banc), *cert. dism'd*, 468 U.S. 1222 (1984).

prejudice the adversary, and whether a meritorious defense is presented." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500-01 (5th Cir. 2015) (citing *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008) (internal quotations omitted)).[24]  "A *willful default* is an intentional failure to respond to litigation."  *Scott v. Carpanzano*, 556 F. App'x. 288, 294 (5th Cir. 2014) (citing *Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 370 n. 32 (5th Cir. 2008) (emphasis in original)).  "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding."  *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).  The burden of proof is on the Defendant to demonstrate by a preponderance of the evidence that his default was excusable, rather than willful.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014).

However, there was nothing excusable nor justifiable about the Defendant's lack of response to the complaint.  Indeed, the evidence unmistakably establishes that the failure of the Defendant to answer the complaint was completely willful.  The Defendant was properly served with the complaint and summons.  He did nothing.  He was subsequently served with both the notice of default and the motion for default judgment. He did nothing.  He was fully aware that the adversary complaint was being prosecuted

---

[24]  The court may also consider other relevant factors, such as "whether [the movant] acted expeditiously to correct the default." *UnitedHealthcare Ins. Co. v. Holley*, 2018 WL 775291, at *2 (5th Cir. Feb. 7, 2018) (citing *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)) [finding that, though a defendant received notice of the lawsuit, she failed to respond or stay abreast of the status of the litigation against her constituting "a true dereliction of her duty of diligence to inquire about the status of [her] case."].

against him.  He was fully aware of his particular defenses that he could have brought against the allegations of the Plaintiff's complaint and he had more than a fair opportunity to present those defenses.  Yet he admittedly and consciously chose to do nothing.  That inaction is exacerbated by the fact that the Plaintiff was, in fact, compelled to bring the adversary complaint in order to preserve his potential right to recovery only because of the Defendant's unilateral decision to seek a discharge of any indebtedness owed to the Plaintiff through the filing of a voluntary bankruptcy petition.  Thus, the fact that the Defendant, 364 days after the entry of judgment, now wants to assert the existence of meritorious defenses is of no consequence.   Because his default was clearly willful, the Defendant's request to set aside the judgment under Rule 60(b)(1) is precluded and must be denied. *UnitedHealthcare Ins. Co. v. Holley*, 2018 WL 775291, at *2 (5th Cir. Feb. 7, 2018); *Wooten*, 788 F.3d at 500.

*Rule 60(b)(3)*

The Defendant further pleads that he is entitled to relief from the judgment because it was allegedly obtained through fraud, misrepresentation, or other misconduct by the Plaintiff.  The Defendant correctly recites that the judgment debt was rendered nondischargeable under § 523(a)(2)(A) as a debt "obtained by" false pretenses, a false representation or actual fraud.[25]  The Defendant contends that such language requires that

---

[25]  11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . .  to the extent obtained by false pretenses, a false

he actually receive money, property or services as a result of the misrepresentation and that the Plaintiff's failure to reveal to the Court that the Defendant received nothing as a result of the transaction constitutes a misrepresentation of the facts to the Court at the time of the judgment.  That argument must necessarily fail upon two grounds.

First, the Defendant's argument is based upon an erroneous legal interpretation. The Defendant contends that § 523(a)(2)(A) excepts from discharge only that amount of "money, property, services, or . . . credit" which literally comes into the possession of a debtor through fraudulent means.   That interpretation is far too circumscribed.  In reliance upon both established and recent United States Supreme Court precedents as expressed in *Strang v. Bradner*, 114 U.S. 555, 561 (1885) and *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998), the Fifth Circuit clearly stated in *Deodati v. M.M. Winkler & Associates (In re M.M. Winkler & Associates)*, 239 F.3d 746 (5th Cir. 2001) that:

> [t]he language of the statute [§ 523(a)(2)(A)] includes no "receipt of benefit" requirement. The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefitted from the fraud.

---

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Unlike other circuits, the Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).   To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A) — which applies whenever the representation is made with reference to a future event — an objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

> Thus, the plain meaning of the statute is that debtors cannot discharge any debts that arise from fraud so long as they are liable to the creditor for the fraud.

*Id. at* 749 (citations omitted).  "We conclude that if a debt arises from fraud and the debtor is liable for that debt under state . . . law, the debt is nondischargeable under § 523(a)(2)(A)."  *Id*. at 751.  *See also*, *Tower Credit, Inc. v. Gauthier (In re Gauthier)*, 349 F. App'x. 943, 945 (5th Cir. 2009) [concluding that a debt "may be nondischargeable when the debtor personally commits fraud or when actual fraud is imputed to the debtor under agency principles."].  Thus, the Defendant's contention that a debt arising from fraud cannot be rendered nondischargeable under § 523(a)(2)(A) because he failed to obtain money or property for his personal benefit has been soundly rejected as contrary to the plain meaning of the dischargeability statute.

Secondly, the Defendant has not demonstrated his entitlement to utilize Rule 60(b)(3) to obtain relief from the judgment in any event.  The Fifth Circuit has previously held that:

> A party making a Rule 60(b)(3) motion must establish:  (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. The moving party has the burden of proving the misconduct by clear and convincing evidence.

*Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citations omitted).  As previously stated, the Defendant is precluded from relying upon a receipt of benefits requirement in alleging that the Plaintiff withheld information from the Court in a

fraudulent manner.  Further, even if such preclusion did not arise, the Defendant has

totally failed to show that any such misconduct prevented him from fully and fairly

presenting his case (to say nothing of the burden to demonstrate such by clear and

convincing evidence).  *PC Drivers Headquarters, L.P. v. AmbiCom Holdings, Inc.*, 2017

WL 1052608, at *2 (W.D. Tex. Mar. 20, 2017).  Without such clear and convincing

evidence, the Defendant has failed to demonstrate that he is eligible for relief under Rule

60(b)(3).

*Rule 60(b)(5)*

The Defendant alternatively pleads that, because the Plaintiff allegedly received

money arising from the subsequent execution of a lease of the same mineral acreage

addressed in this litigation, he is entitled to relief from any prospective application of the

judgment under Rule 60(b)(5) in order to prevent a double recovery by the Plaintiff.[26]

Rule 60(b)(5) permits the court to relieve a party from a judgment where "the judgment

has been satisfied, released, or discharged, . . . or it is no longer equitable that the

judgment should have prospective application."  "The requirements for relief under that

---

[26]  The first two prongs of (a)(5) [i.e., that the judgment has been satisfied, released or discharged or based on an earlier judgment that has been reversed or vacated] are not applicable to the current dispute.  Further, the Defendant is disqualified from bringing an independent equitable action to relieve himself of the judgment. "An independent action is brought in equity to set aside judgments that would result in a manifest miscarriage of justice, and requires, among other things, the absence of fault or negligence on the part of the defendant." *ABC Utils. Servs., Inc. v. Orix Fin. Servs., Inc.*, 98 F. App'x. 992, 994 (5th Cir. 2004).  The Defendant certainly cannot meet that standard in an action in which he was properly served yet intentionally refused to participate and to timely assert defenses known to him.

provision of Rule 60(b)(5) are that (1) the judgment has prospective application[27] and (2) it is no longer equitable that it should so operate. Injunctions, orders of disbarment, and declaratory judgments have all been held to have prospective effect. The impact of such judgments is obviously continuing." *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 650 (S.D. Tex. 2009) (citing *Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir.1983).  However, the rule has limitations.  "The fact that the rule allows relief if it is 'no longer equitable' for the judgment to have prospective application is not a substitute for an appeal.  It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable."  11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRACTICE & PROCEDURE -- CIVIL § 2863 at pp. 459-60 (3d ed. 2012). Most importantly, as recognized by another major treatise,

> Simple money judgments may not be set aside or reopened under Rule 60(b)(5) because simple money judgments have no prospective application.  Even if the judgment debtor has not yet paid the judgment, it remains a final judgment; it is not "prospective," since it is not executory and involves no judicial supervision of changing conduct or conditions.

12 DANIEL R. COQUILLETTE, ET. AL., MOORE'S FEDERAL PRACTICE §§ 60.47[1][b] (2017

---

[27] The standard used in determining whether a judgment has prospective application is "whether it is 'executory' or involves 'the supervision of changing conduct or conditions." *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir.1995) (citing *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir.1988)).  To hold a judgment has prospective effect so long as the parties are bound by it would read the word "prospective" out of the rule.  *Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir.1992).

ed.).  *See also*, *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574, 587 (6th Cir. 2004); *Castles Auto & Truck Serv., Inc. v. Exxon Corp.*, 16 F. App'x. 163, 168 (4th Cir. 2001); *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994); *McDonald v. Oliver*, 642 F.2d 169, 171 (5th Cir. 1981). The party seeking relief has the burden of proof.  *Cooper v. Texas Alcoholic Beverage Com'n*, 820 F.3d 730, 741 (5th Cir. 2016).

The Defendant has failed to establish that he is entitled to relief under Rule 60(b)(5).  The default judgment is a money judgment against the Defendant which has no prospective application.[28]  Despite proper notice, the Defendant consciously elected to forego any participation in the adversary proceeding and took no action even though he knew that he possessed potential defenses to the claim and even when he was notified that the Plaintiff was seeking the entry of a default judgment.  Even assuming that any amounts received by the Plaintiff from a subsequent lease of the mineral acreage could inure to the benefit of the Defendant's liability under the judgment (a proposition neither conceded nor proven), any limitation upon the right of the Plaintiff to recover damages

---

[28]  As one court observed in the context of the third portion of Rule 60(b)(5),

> [v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth. That a court's action has continuing consequences, however, does not necessarily mean that it has prospective application for the purposes of Rule 60(b)(5).

*Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988).

based upon such a mitigation of damages concept[29] is an affirmative defense which must have been both pleaded and proven under both the Texas Rules of Civil Procedure[30] and the Federal Rules of Civil Procedure.[31]  No evidence of a failure to mitigate is admissible unless a defendant pleads the failure to mitigate as an affirmative defense.  *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc*., 948 S.W.2d 293, 300 (Tex. 1997).   When a defendant fails to plead mitigation of damages as an affirmative defense, he waives the right to raise them at a later time.   In refusing to participate in the adversary proceeding, the Defendant waived his right to raise the mitigation defense and Rule 60(b)(5) cannot be properly used to escape the consequences of that waiver.

Further, the Defendant's reliance upon the decision in *Johnson Waste Materials v. Marshall*, 611 F.2d 593 (5th Cir. 1980) is misplaced.  In *Johnson Waste*, the Fifth Circuit

---

[29]  The mitigation-of-damages rule, sometimes referenced as the doctrine of avoidable consequences, prevents an injured party from recovering damages arising from a breach of contract or tort that such party could avoid by reasonable efforts.  Reasonable efforts are those that a party can avoid at a trifling expense or with reasonable exertions. The party raising the failure to mitigate defense must prove lack of diligence as well as the amount by which the damages were increased as a result of the failure to mitigate.  *Kartsotis v. Bloch*, 503 S.W.3d 506, 521–22 (Tex. App.—Dallas 2016, pet. denied) (citing *Great Am. Ins. Co. v. N. Austin Mun. til. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995)).

[30]  TEX. R. CIV. P. 94.  *In re Estate of Downing*, 461 S.W.3d 231, 242 (Tex. App.—El Paso 2015, no pet.) and cases cited therein [noting that such defense must be raised in responsive pleadings or they are waived].  *See also, Hygeia Dairy Co. v Gonzalez*, 994 S.W.2d 220, 224 (Tex. App. – San Antonio 1999, no pet.) ["The burden of proving a failure to mitigate is upon the party who caused the loss and the standard is that of ordinary care, i.e., what an ordinary prudent person would have done under the same or similar circumstances."].

[31]  FED. R. CIV. P. 8(c).  *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) ["Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case.]; *Altec Capital Services, LLC v. Weir Bros., Inc*., 2013 WL 866193, at *4 (N.D. Tex. Mar. 8, 2013) (citing FED. R. CIV. P. 8)  ["Mitigation of damages is an affirmative defense on which defendants will have the burden of proof at trial. They must therefore affirmatively plead the defense."]; *CSC Holdings, Inc. v. New Info. Techs., Inc*., 148 F. Supp. 2d 755, 759 n.3 (N.D. Tex. 2001) ["Mitigation is an affirmative defense that must be specifically pleaded."].

stated as follows:  "We hold that in the exceptional circumstance where the evidence of payment is virtually conclusive, mere negligence on the part of the judgment debtor does not preclude reformation of the judgment in a Rule 60(b) independent action." *Id.* at 595. The court in *Johnson Waste* was addressing a very limited, very distinct circumstance that is far more restrictive in scope than engendered by the Defendant.  In addition to the barriers previously stated, the equitable considerations undergirding the *Johnson Waste* decision are not present here.  This omission went beyond mere negligence.  The Defendant's refusal to participate in the litigation was intentional.  Any mitigation concept that might have reduced or defeated Defendant's liability could have easily been pleaded (and perhaps proven) by the Defendant had he only elected to participate in the case.  He deliberately chose otherwise.  Equitable principles are not served by rewarding such deliberate inaction.  This conduct (or lack thereof) over a period of 18 months by the Defendant more closely resembles those cases which have rejected the application of the generous equitable exception utilized in *Johnson Waste*.  *See, e.g.,  Wilcox v. Petroleum Helicopters, Inc.*, 145 F.R.D. 406, 408 (S.D. Tex. 1993)  [*Johnson Waste* rationale inapplicable when a party intentionally withheld mitigation evidence for tactical reasons until after trial was lost and judgment was entered]; *Halliburton Energy Services, Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 651 (S.D. Tex. 2009) [post-trial "discovery" of relevant documents was not a changed circumstance deserving of *Johnson Waste*-type relief under Rule 60(b)(5)].  Upon due consideration, the Defendant has failed to demonstrate that he is eligible for relief under Rule 60(b)(5).

*Rule 60(b)(6)*

Finally, the Defendant claims an entitlement to relief from the judgment under Rule 60(b)(6).  As described by the Fifth Circuit,

> Rule 60(b)(6) provides that a court may "relieve a party . . . from a final judgment . . . for . . . any other reason justifying relief from the operation of the judgment." Rule 60(b) sets out five specific bases for granting relief from a final judgment, followed by clause (b)(6). We have held that this clause's 'any other reason' language refers to any other reason than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion. Although we frequently have recognized that Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses,  we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present.

*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (citations and internal quotations omitted).  "The broad language of clause (6) gives the court ample power to vacate judgment whenever such action is appropriate to accomplish justice . . . [but] . . . only if extraordinary circumstances are present." *Hesling,* 396 F.3d at 642.

There are no extraordinary circumstances presented by the Defendant.  Indeed, the Defendant is precluded from obtaining relief under Rule 60(b)(6) because he essentially offers the same grounds for relief under this subsection as he did under the other subsections of Rule 60(b).  "Relief under 60(b)(6) is mutually exclusive from relief available under sections (1)-(5)," *McKay,* 751 F.3d at 702 n.5 (citing *Hesling*, 396 F.3d at 643), and such failure to advance any separate ground for relief under Rule 60(b)(6) is

-22-

fatal to such a request.  *Bradford v. Law Firm of Gauthier*, 633 F. App'x. 276, 278 (5th Cir. 2016); *Fife v. Hensley,* 501 F. App'x 332, 333 (5th Cir. 2012) ["the reason for relief . . . cannot be the reason for relief sought under another subsection of 60(b)"]. Thus, the Defendant's request for relief from judgment under Rule 60(b)(6) is denied.


## Conclusion

The purposes sought to be achieved by the Bankruptcy Code in the adjustment of debtor-creditor relationships, and the processes imposed by the Federal Rules of Bankruptcy Procedure to accomplish those purposes, places the application of Federal Rule of Civil Procedure Rule 60(b) into a unique light.   In this instance, the pending state court litigation would have decided the disputes among all of the parties, including the Defendant, had it not been for the voluntary filing of a Chapter 7 bankruptcy petition by the Defendant.  It was the Defendant who elected to seek the entry of a Chapter 7 discharge order to protect himself from various claims, including those asserted by the Plaintiff.  He was represented by counsel in his bankruptcy case and he is charged with the knowledge that his filing of such a petition compelled the Plaintiff, as well as other creditors, to respond with an adversary complaint if they were to seek protection against the entry of, or the impact of, such a discharge order.  Much is made regarding a debtor's right to an expeditious determination regarding his right to a discharge or the determination of the dischargeability of a particular debt, *Neeley v. Murchison,* 815 F.2d

345, 346-47 (5th Cir. 1987)[32] and that the time limits imposed by Bankruptcy Rules 4004

and 4007 are "strictly enforced." *See, e.g., Ichinose v. Homer Nat'l Bank (In re Ichinose)*,

946 F.2d 1169, 1172-73 (5th Cir. 1991).  If a creditor misses the expedited complaint

deadline pertaining to the subsections of the Bankruptcy Code referenced in this

adversary, he forfeits the right to seek such a determination and its claim will be subjected

to all of the prohibitions imposed by the discharge order.  Because a creditor is compelled

by the Bankruptcy Rules to act swiftly in presenting any challenge regarding a debtor's

discharge, a bankruptcy debtor has a corresponding duty to timely  participate in that

---

[32] In *Neeley*, the Fifth Circuit observed that the time limit imposed for the filing of a complaint to determine dischargeability of a debt under Rule 4007:

> . . .evince a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.  This fixed, relatively short limitation period enables the debtor and creditors to make better-informed decision early in the proceedings. . . .  Moreover, § 523(c) of the Code, which Rule 4007 is designed to implement, places a heavy burden on the creditor to protect his rights:  a debt of the type presented here is automatically discharged unless the creditor requests a determination of dischargeability.

*Neeley*, 815 F.2d at 346-47.  The same policy applies to an objection to discharge under Rule 4004.  *See, e.g., State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996) in which the Rule 4004 deadline was described as:

> . . . an inflexible and mandatory rule, one not subject to a court's discretion. . . . Even though deadlines may lead to harsh results in particular cases, their observance by the bankruptcy bar and their enforcement by courts lead to the salutary result of bringing finality to bankruptcy proceedings.
>
> The interest of finality, advanced by the deadline, further an important policy goal in bankruptcy law, that is, that a debtor obtain a fresh start in life and an opportunity to move ahead free of financial distress as quickly as possible.  After the deadline passes, it is too late for any party to object to discharge in an ongoing adversary proceeding . . . .  Hence, under § 727 an objection must be made within 60 days or not at all.

*Id.* at 1310.

prompt determination of a discharge issue — litigation that would be unnecessary but for the debtor's unilateral and voluntary election to seek the relief offered by that discharge. A debtor's willful decision to ignore the expedited nature of that process simply cannot be countenanced.

In this case, the Defendant elected, at least with regard to *this* particular adversary proceeding, to forego any such prompt participation.  He was promptly served with the complaint and summons.  He elected not to respond.  He was notified that an entry of default had been entered against him.  He intentionally ignored it.  He was served with the motion for default judgment.  He did nothing.  Yet he now wants to complain that he did not get to participate and bemoans how the entry of a default judgment against him is fundamentally unfair — though he alone is responsible for the triggering of the bankruptcy dischargeability process and his selective refusal to participate in it.  With that background, there is no sound public policy that is promoted by rewarding the Defendant for his intransigence over a period of 18 months after the filing of the dischargeability complaint.

The Court did not enter the default judgment lightly.  In fact, despite the Defendant's intentional default, it properly denied the § 727 relief sought by the Plaintiff's complaint because it was not supported by the admitted facts and, as a result, the Defendant has correspondingly now obtained the benefits of the entry of a discharge order.  However, when a creditor timely raises allegations that impact the dischargeability of a particular debt subject to that discharge, a debtor simply has the obligation to come

-25-

forward and to offer whatever defense he may have against those allegations.  In other

words, he needs to demonstrate that he is, in fact, an "honest but unfortunate debtor."

When he intentionally elects not to do so, he willfully risks the imposition of significant

negative consequences. No judge favors the resolution of a dispute through the entry of a

default judgment but, as recognized by the Tenth Circuit, and as made even more

compelling in the context of the time demands of bankruptcy dischargeability litigation, at

times it is simply compelled:

> Strong policies favor resolution of disputes on their merits.  The default
> judgment must normally be viewed as available only when the adversary
> process has been halted because of an essentially unresponsive party.  In
> that instance, the diligent party must be protected lest he be faced with
> interminable delay and continued uncertainty as to his rights.  The default
> judgment remedy serves as such a protection. We do not favor default
> judgments because the court's power is used to enter and enforce judgments
> regardless of the merits of the case, purely as a penalty for delays in filing
> or other procedural error.  However, a workable system of justice requires
> that litigants not be free to appear at their pleasure.   We therefore must
> hold parties and their attorneys to a reasonably high standard of diligence in
> observing the courts' rules of procedure.  The threat of judgment by default
> serves as an incentive to meet this standard.

*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc*., 715 F.2d 1442, 1444-45

(10th Cir. 1983).  Accordingly, the Motion for Relief from Judgment filed by the Debtor-

Defendant, Leo Edward Whelan, shall be denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[33] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052.  An appropriate order shall be entered which is consistent with this opinion.

Signed on 02/16/2018

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[33]  To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.